IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANA BOWERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-1314-C |
| | § | |
| ABUNDANT HOME HEALTH, | § | |
| LLC; JAMES L. SANTIAGO, | § | |
| individually; and LAILANI | § | |
| MENDOZA, individually, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred by Senior United States District Court Judge Sam R. Cummings to the undersigned United States magistrate judge to conduct an evidentiary hearing and to enter findings, conclusions, and recommendation. *See* Dkt. No. 78. The Court held a hearing on November 2, 2020 to determine whether Defendant Abundant Home Health, LLC's representative, James Santiago, executed a settlement agreement offered by Plaintiff Jana Bowers. Both Abundant and Bowers filed supplemental briefs after the hearing. *See* Dkt. Nos. 99, 100.

Based on the testimony and exhibits introduced at the hearing, the Court should find that Santiago did not knowingly execute the agreement.

## Background

This action began as a dispute over unpaid overtime compensation under the Fair Labor Standards Act. *See* Dkt. No. 1. Now, after a trip up to the United States

Court of Appeals for the Fifth Circuit and back, the primary dispute is whether Abundant and Bowers entered into an enforceable settlement agreement. *See* Dkt. No. 53.

The settlement dispute came about in the fall of 2017 when, after litigating this case for over a year, the parties began negotiating in earnest. Those negotiations were seemingly fruitful. On November 4, 2017, Defendants' attorney at that time, Mr. David Weaver, sent word that Defendant James Santiago had "authorized [him] to agree to your demand" of $45,000. Dkt. No. 94-1 at 19. Over the next several days, Mr. Weaver and Plaintiff's attorney, Mr. R. Douglas Welmaker, exchanged emails concerning the timing of the settlement and the amount of an agreed judgment to secure the settlement. *See id.* at 23-24. After working out those details, Mr. Weaver offered to write the first draft of the settlement agreement, and his draft, sent November 7, 2017, included the settlement payment amount of $45,000; a settlement payment due date of January 15, 2018; and the agreed judgment amount of $55,000. *See id.* at 26, 30-36.

Having come to an agreement, the parties filed a notice of settlement on November 14, 2017, advising the Court "that they [had] reached a resolution in this matter and that [they were] in the process of finalizing the settlement papers and funding the settlement." Dkt. No. 21. The Court administratively closed the case, and this action seemed destined for a quiet end. *See* Dkt. No. 22.

The parties then continued drafting the agreement. On November 28, 2017, after several drafts were exchanged with redline edits, the parties agreed to a final

version of the settlement document (the "Original Agreement"). Dkt. No. 94-1 at 50, 61-69. Mr. Weaver stated that he would get the agreement in "final form for [his] client's execution and will send the signed copy to you for your client's signature." *Id.* On November 30, 2017, before receiving a signed copy from Defendants, Mr. Welmaker sent a copy of the Original Agreement to Bowers. *See id.* at 61-69. The copy included the same essential terms as Mr. Weaver's first draft. *See id.* at 30-36, 61, 63-69. On December 13, 2017, Mr. Welmaker sent only the signature page of the Original Agreement signed by Bowers to Defendants. *See id.* at 71-73.

On December 15, 2017, Mr. Weaver responded. He first stated: "Here are the signature pages from my clients." *Id.* at 75. But he also stated that "[w]e have a problem." *Id.* Mr. Weaver explained that Santiago had told him the loan that Abundant was planning to use to fund the settlement would not be available until at least February 15, 2018 and that he did not have the money to pay the settlement until then. *See id.*

Attached to the email were two documents. The first was the signature page from the Original Agreement signed by Bowers and Santiago, on behalf of Abundant. *See id.* at 72. The second document was what seemed to be a complete copy of the Original Agreement signed by all the Defendants, but not signed by Bowers. *See id.* at 79-85. This agreement (the "Second Agreement") contained four changes from the Original Agreement:

(1)    The date of initial $45,000 payment was changed from is Jan. 15, 2018 to February 30, 2018 [sic].

(2)     The amount for the entry of judgment was changed from $55,000 to $50,000 (the Second Agreement still spelled out fifty-five thousand dollars in the text of the agreement).

(3)     The date to enter judgment if Defendants failed to pay the settlement amount was changed from Jan. 15, 2018 to March 30, 2018.

(4)     In paragraph 5, which explains that Bowers would file a motion for dismissal, the phrase "Upon receipt of the settlement funds" was deleted.

Mr. Welmaker contends that he and Bowers were unaware of these changes and that he believed that the Second Agreement was actually the Original Agreement.

After the December 15, 2017 email, the settlement began to fall apart. The first cracks began to show on January 30, 2018, when the parties filed a joint motion to extend the deadline for dismissal. *See* Dkt. No. 23. The parties informed the Court that Defendants had "encountered difficulty with financing" the settlement and thus needed additional time to file the dismissal papers. *Id.* The Court granted the additional time, but the motion for dismissal never came. Instead, Mr. Weaver filed a motion to withdraw as Defendants' attorney of record, *see* Dkt. No. 25, and Bowers followed with a motion to reinstate the case, *see* Dkt. Nos. 26, 27, which seemingly ended the prospect of a settlement. The Court reinstated the case, *see* Dkt. No. 29, allowed Mr. Weaver to withdraw, *see* Dkt. No. 31, and set the case for a November 15, 2018 trial, *see* Dkt. Nos. 33-35.

But six weeks before the trial, Bowers filed a motion to enforce the settlement and enter judgment. *See* Dkt. No. 43. Bowers attached the Second Agreement to the Motion. *See* Dkt. No. 43-1. The Court granted the motion on October 15, 2018, *see* Dkt. No. 49, and entered judgment, *see* Dkt. No. 49. Two weeks later, Bowers filed an

amended motion to enforce the settlement, *see* Dkt. No. 53, asking the Court to enforce the Original Agreement, rather than the Second Agreement that she had mistakenly attached to her first motion, *see id.*

Defendants filed a motion for new trial a week later. *See* Dkt. No. 55. They argued that the Second Agreement was a counteroffer and that, therefore, there was no meeting of the minds and no enforceable settlement agreement. *See id.* Defendants also argued that Abundant had not knowingly signed the Original Agreement and that the signature page from that agreement had been sent to Bowers in error. *See id.*

Without holding a hearing, the Court denied Defendants' motion for a new trial, granted Bowers's amended motion to enforce the Original Agreement as to Bowers and Abundant, and vacated its earlier judgment. *See* Dkt. No. 60. After the Court entered a new judgment and denied a subsequent motion for a new trial, Abundant filed a notice of interlocutory appeal. *See* Dkt. No. 73.

On appeal, the Fifth Circuit panel reversed the District Court's entry of judgment of the Original Agreement and remanded. It held that,

> [w]hile Bowers argues that there are no factual disputes regarding the Original Agreement's validity, Abundant claims the agreement is invalid because it "must have been" executed in error. Specifically, Abundant's counsel provided an affidavit stating that he cannot explain how the Original Agreement came to be signed or why he transmitted the signature page to Bowers's counsel. Because Abundant's counsel does not recall asking Abundant to sign the Original Agreement, he believes that both actions must have been done by mistake.

> In federal contract law, it is axiomatic that "one who signs or accepts a written instrument will normally be bound in accordance with its written terms," regardless of whether he bothered to read the document before signing it. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (internal quotation omitted); *see also* Restatement (Second) of Contracts § 23 (1981). However, "ordinary contract principles require a 'meeting of the minds' between the parties in order for agreements to be valid." *Id.* And if Abundant's representative did not knowingly and voluntarily sign the settlement agreement, "he may not have consented to [it] and a meeting of the minds may not have existed." *Id.* Because such "consent ... is the essence of every valid contract," *French v. Shoemaker*, 81 U.S. (14 Wall.) 314, 333, 20 L.Ed. 852 (1871), and the circumstances surrounding Abundant's execution of the Original Agreement are murky (at best), we remand for an evidentiary hearing on the very limited issue of whether Abundant's representative knowingly and voluntarily executed the Original Agreement.

*Bowers v. Abundant Home Health, L.L.C.*, 803 F. App'x 765, 767 (5th Cir. 2020) (footnotes omitted).

On remand, the Court held an evidentiary hearing on November 2, 2020. *See* Dkt. No. 96. Both parties submitted documents for the Court to consider, *see* Dkt. Nos. 94-95, and during the hearing the Court entered those exhibits into evidence without objection, *see* Official Electronic Transcript of Evidentiary Proceedings ("Tr.") at 8:24-9:2, Dkt. No. 98. At the hearing, Bowers called as witnesses David Weaver, James Santiago, and Douglas Welmaker. *See generally id.*

With the benefit of this evidence, and with the Fifth Circuit's opinion as the guide, the undersigned recommends that the settlement agreement should not be enforced.

## Legal Standards

A district court "has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties" in the case before the Court. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *accord Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) ("A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it.").

Whereas "the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11, Texas Rules of Civil Procedure ('Texas Rule 11')," *Borden v. Banacom Mfg. and Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988) (citing *Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80-81 (5th Cir. 1987)), the validity and enforcement of settlement agreements regarding federal claims is reviewed under federal law, *see Mid-South*, 733 F.2d at 389. Here, because the "underlying claims concern alleged violations of the Fair Labor Standards Act, a federal statute," the Court must "look to federal law to determine whether the settlement agreement is enforceable or valid." *Bowers*, 803 F. App'x 767 n.4 (citing *Fisk Elec. Co. v. DQSI, LLC*, 894 F.3d 645, 650 (5th Cir. 2018); *Mid-South*, 733 F.2d at 389).

Under federal law, settlement agreements are contracts. *See Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). A binding settlement "agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Lopez v. Kempthorne*, No. H-07-

1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010). "Federal law does not require settlement agreements to be reduced to writing." *E.E.O.C. v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011). "Absent a factual basis rendering it invalid, an oral agreement to settle a [federal] claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Fulgence*, 662 F.2d at 1209.

As with all contracts, agreements to settle federal claims must be entered into voluntarily and knowingly. *See Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). "Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Bell*, 36 F.3d at 449. And the Court "may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Tex.*, No. 3:09-cv-1124-G, 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010).

Otherwise, "[t]he federal law of contracts 'uses the core principles of the common law of contracts that are in force in most states.'" *Lopez*, 2010 WL 4639046, at *4 (quoting *Smith v. United States*, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (per curiam)). Because "federal contract law is largely indistinguishable from general contract principles under state common law," the Court may rely on federal cases, state contract law cases, and other treatises to the extent it finds them persuasive.

*In re Deepwater Horizon*, 786 F.3d at 354-55 (internal quotation marks and footnotes omitted).

"One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Mid-South*, 733 F.2d at 392 (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630 (1948)). But the party opposing enforcement of the settlement must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement. *See id.* at 390 ("Although a district court has inherent power to enforce an agreement to settle a case pending before it *summarily*, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement.") (emphasis in original). And "[t]his central issue – whether there was any disputed issue of material fact as to the validity of the settlement agreement[] – is similar to that which any court must address when ruling on a motion for summary judgment." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015) (internal quotation marks omitted).

## Analysis

## I.    The Court should consider only whether Abundant's representative executed the Original Agreement.

Before reaching the merits of the parties' arguments, the Court must determine the proper scope of its inquiry on remand. A district court on remand "must comply with a mandate issued by an appellate court," *M.D. by Stukenberg v. Abbott*, 977 F.3d 479, 482 (5th Cir. 2020), and "may not disregard [its] explicit directives,"

*Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015) (quotations omitted). Indeed, "[t]he mandate rule requires a district court on remand to effect [the] mandate and to do nothing else." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (citing *United States v. Castillo,* 179 F.3d 321, 329 (5th Cir.1999)). Specifically, the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* And "the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004).

In its March 5, 2020 Opinion, the Fifth Circuit held that, because there was a disputed fact issue regarding the validity of the settlement, remand was necessary "for an evidentiary hearing on the very limited issue of whether Abundant's representative knowingly and voluntarily executed the Original Agreement." *Bowers*, 803 F. App'x at 767. The panel also stated that "[m]ore information is needed to ensure that Abundant's representative consented to the terms of the Original Agreement." *Id.* at 768.

In addition to explaining what the focus of the evidentiary should be, the Fifth Circuit panel also explained that

> [i]t is worth noting what issues are not subject to the evidentiary hearing. Abundant argues that it is not bound by the Original Agreement because it did not accept the agreement but proposed counter-offers to it. For instance, the email attaching Abundant's executed signature page contained another attachment: a revised settlement agreement signed by all of the defendants that – unbeknownst to Bowers – changed material terms. The text of the email also noted that Abundant had run into a problem with funding and likely would not be able to

perform by the January 15 deadline set forth in the Original Agreement. Abundant characterizes both the revised agreement and the email's text as counter-offers that expressly rejected the Original Agreement. Abundant's characterization is incorrect. There are no questions of fact regarding whether Abundant made a counter-offer. It did not. So this issue is not the subject of our limited remand.

*Id.* at 767-68 (footnotes omitted). But the panel "expressed no opinion" on the distinct "factual question of whether Abundant *intended* the email to be a counteroffer …. which is closely intertwined with the question of whether Abundant consented to the original settlement agreement." *Id.* at 768 n.8.

Notably, the Fifth Circuit declined to consider Bowers's argument "that the parties had an enforceable settlement agreement as early as November 6, 2017, and no later than November 28, because the details of the settlement agreement had been finalized and agreed upon by counsel." *Id.* at 767 n.3. "Without expressing any views on the validity of those agreements," the panel noted that its "jurisdiction [was] limited to reviewing the district court's judgment: enforcement of the Original Agreement." *Id.*

Based on these passages, the Fifth Circuit Opinion raises two possibly conflicting directives. On one hand, it states that the evidentiary hearing is limited to whether Santiago "executed" the agreement. On the other, it raises the question of whether Abundant "consented" to the agreement through its counsel. Although similar, the first directive is a narrow inquiry into whether Santiago knowingly and voluntarily signed the Original Agreement's signature page attached to the December 15, 2017 emails. The second inquiry, by contrast, is potentially broader, and could

encompass Bowers's argument that Abundant's counsel consented to the Original Agreement on an earlier date, which would require a determination of whether they agreed on the material terms and whether Abundant had granted its counsel authority to settle.

The Court should limit its inquiry to whether Santiago knowingly and voluntarily executed the Original Agreement. The Fifth Circuit explicitly stated that the evidentiary hearing on remand was limited to "the very limited issue of whether Abundant's representative knowingly and voluntarily executed the Original Agreement." *Id.* at 767. This directive is narrower and clearer than the question of consent without a signature and therefore better encompasses the Fifth Circuit's mandate.

And the broader question of whether Abundant consented to the agreement at an earlier point, which Bowers raises in her supplemental brief, *see* Dkt. No. 100, is not properly before the Court. Bowers did not raise this argument in her amended motion to enforce the settlement, *see* Dkt. No. 53, or in her briefing in opposition to Abundant's motion for a new trial, *see* Dkt. Nos. 64, 70. Rather, Bowers raised those arguments for the first time on appeal, but the Fifth Circuit declined to consider them because its "jurisdiction [was] limited to reviewing the district court's judgment." *Bowers*, 803 F. App'x at 767 n.3. Because Bowers failed to raise these arguments previously in the district court and they were found not properly before the Fifth Circuit, they are not properly before this Court on this limited remand.

**II.    The evidence does not show that Santiago knowingly and voluntarily executed the Original Agreement.**

Based on the testimony and documents presented at the evidentiary hearing, the Court should not enforce the Original Agreement because it is not clear that Santiago knowingly and voluntarily executed the Original Agreement.

Under federal law, "a binding settlement 'agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance.'" *Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-cv-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (quoting *Lopez*, 2010 WL 4639046, at *4). "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *In re Deepwater Horizon*, 786 F.3d at 355 (footnote omitted). Likewise, acceptance of an agreement is generally determined by "outward, objective manifestations of assent," and therefore "an actual intention to accept is unimportant except in those situations when the acts or words of the offeree are ambiguous." 2 WILLISTON ON CONTRACTS, § 6:3: *Objective manifestations generally control* (4th ed.).

Normally, "'one who signs or accepts a written instrument will … be bound in accordance with its written terms,' regardless of whether he bothered to read the document before signing it." *Bowers*, 803 F. App'x at 767 (quoting *Am. Heritage*, 321 F.3d at 538). But, if a party does not "knowingly and voluntarily sign the settlement agreement," there may be a lack of consent and "a meeting of the minds may not have existed." *Id.*

Here, despite Mr. Weaver's testimony insinuating that Santiago did not actually sign the Original Agreement, *see* Tr. at 55:10-18, the evidence in the record

indicates that Santiago, on behalf of Abundant, signed the Original Agreement signature page sent by Mr. Welmaker on December 13, 2017. But the evidence also indicates that, on December 15, 2017, Abundant did not consent to the terms of the Original Agreement because Santiago did not knowingly sign the Original Agreement. *See* Dkt. No. 99 at 1-3.

Abundant's actions throughout the negotiation indicate that it did not intend for Santiago to execute the Original Agreement on December 15, 2017. Early in the process, Abundant indicated that the timing of the settlement payment was material to the agreement when it informed Bowers that, because it needed a loan to fund the settlement, it needed an extended payment schedule. *See* Dkt. No. 94-1 at 23. Then, on December 15, 2017, Abundant stated that it could not meet the Original Agreement's payment deadlines because the loan had been delayed. *Id.* at 75. Along with the statement, Abundant attached the signed Second Agreement with, among the other changes, a new payment deadline. *Id.* Though the email was not a "legally effective counteroffer," the change to several material terms, including the payment deadline, indicates that "Abundant *intended* the email to be a counteroffer," which supports its position that it did not consent to the Original Agreement's terms. *Bowers*, 803 F. App'x at 768 n.8.

The testimony likewise supports that Abundant's representative did not knowingly execute the Original Agreement. Mr. Weaver testified that he mistakenly sent the Original Agreement signature page to Santiago, *see* Tr. at 69:6-10, and that he did not intend to have Santiago sign the Original Agreement because Santiago

told him that he could not perform several material terms, *see* Tr. at 68:21-25. And, although the undersigned does not find Santiago's testimony credible due to his failure to remember any detail of the settlement negotiations, he repeatedly denied that he had the money to fund the settlement on December 15, 2017, or that he knowingly consenting to the Original Agreement's terms. *See, e.g.*, *id.* at 98:14-21.

Because the evidence weighs in favor of finding Abundant did not knowingly execute the Original Agreement, the Court should not find that the parties entered into an enforceable settlement.

## Recommendation

For the reasons explained above, the Court should find that Abundant's representative did not knowingly and voluntarily execute the Original Agreement.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      SO ORDERED.

      DATED: January 25, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE